IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

DISTRICT EQUITIES REAL ESTATE, LLC :
1333 V St., NW :
Washington DC 20009 :
                    Plaintiff :
    v. : Case No. _____
URBANSPACE TYSONS, LLC :
80 5th Avenue :
18th Floor :
New York, NY 10011 :
:
Serve: :
Cogency Global Inc., Registered Agent :
250 Browns Hill Court :
Midlothian, VA 23114 :
:
                    Defendant :

## COMPLAINT

Plaintiff, District Equities Real Estate, LLC ("District Equities"), by and through its attorneys, Jeffrey M. Schwaber, Deanna L. Peters, and Stein Sperling Bennett De Jong Driscoll PC, hereby sues and demands judgment against Defendant, Urbanspace Tysons, LLC ("Urbanspace Tysons"), stating as follows:

### PARTIES

1. District Equities is a limited liability company, organized and existing under the laws of the District of Columbia.

2. Urbanspace Tysons is a limited liability company, organized and existing under the laws of the State of Delaware. Urbanspace Tysons maintains a principal place of business in the State of New York.

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301-340-2020

1

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over the causes of action alleged in this Complaint pursuant to 28 U.S.C. §§ 1332.

4. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

## FACTS

5. District Equities was established in 2015 by its founder, Steve Gaudio. District Equities represents both real estate projects and growing businesses in retail real estate brokerage and investment. It specifically brings to projects unique operators that add value to the overall project, even at inferior economics. District Equities works on behalf of retail clients to locate them in projects that value their business for more than just their tenancy and rent, but also for the overall value they add to the project due to their desirability in a place where people live or work.

6. Urbanspace Tysons is a limited liability company that, along with various other separately organized and existing limited liability companies, is organized under the corporate brand of Urbanspace. Upon information and belief, Foodhall Holdings, LLC ("Foodhall") is the holder of all of the Urbanspace companies, and does not otherwise conduct business.

7. Urbanspace, initially formed in the United Kingdom as Urban Space Management, established itself in the United States in New York City in 1993. Urbanspace commenced its New York City operations with the founding of the Grand Central Holiday Fair, and ultimately opened various holiday and other pop-up markets in and around New York City. In or about 2015, Urbanspace opened the first of its food halls—a concept bringing a variety of food vendors into one brick and mortar market—in New York City. Through its pop-up markets

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301-340-2020

and food halls, Urbanspace developed and concentrated its business in New York. Urbanspace, however, desired to expand its business to new communities and spaces outside of New York.

8. In furtherance of that desire, in 2016 and 2017, Urbanspace worked with District Equities to introduce them to the prospect of working in the D.C. market. District Equities even offered to develop for Urbanspace a Strategic Expansion Plan to identify suitable and viable markets within the Washington Metropolitan Area into which Urbanspace could expand.

9. In or about September of 2018, an opportunity arose with the precipitous closing of a 41,000-square-foot food hall in Tysons Galleria, which initially had been developed as the Isabella Eatery by high-profile chef, Mike Isabella.

10. Urbanspace wanted to capitalize on and pursue the opportunity to re-brand the food hall at Tysons Galleria to an Urbanspace food hall (the "Tysons Galleria Foodhall Project"), but it did not have any business presence whatsoever—let alone the relationships and institutional knowledge necessary—in the Washington Metropolitan Area to revitalize the high profile food hall in the two-month time frame that the property owner required.

11. Because of its prior dealing with District Equities, Urbanspace was uniquely aware of District Equities' knowledge and foothold in the Washington Metropolitan Area markets. As a result, Urbanspace approached District Equities, hoping it could help make the Tysons Galleria Foodhall Project opportunity possible.

12. Urbanspace Tysons was formed in Delaware on or about September 24, 2018, and registered in the Commonwealth of Virginia on or about November 15, 2018, for that purpose.

13. District Equities was intrigued by the Tysons Galleria Foodhall Project, and further was enticed by the promise of a more robust joint venture agreement that would expand throughout the region. Nonetheless, District Equities had concern about its participation with

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301-340-2020

Urbanspace. Specifically, District Equities was concerned that Urbanspace—which had no business or contacts in the Washington Metropolitan Area and specifically in Tysons Corner—would exploit District Equities' knowledge, goodwill, and proprietary customer lists and relationships, and then cut District Equities out of the deal.

14. As ultimately revealed by the actions of Urbanspace Tysons and Foodhall, District Equities' fears were well-grounded. Unbeknownst to District Equities, Urbanspace Tysons and Foodhall conspired together to lure District Equities into a sham contract with Foodhall, under the guise of an expressed intent for Foodhall and District Equities to form a joint venture relationship for pursuit of food hall and other opportunities in the Washington Metropolitan Area and beyond. Unbeknownst to District Equities, neither Foodhall nor Urbanspace Tysons ever intended to form the joint venture. Rather, Foodhall and Urbanspace Tysons desired to obtain and use District Equities' intellectual capital, relationships and goodwill to secure the Tysons Galleria Foodhall Project and then usurp District Equities' intellectual capital, relationships and goodwill to gain their own foothold in the Washington Metropolitan Area. They did so by obtaining District Equities' commitment to divulge its intellectual capital and parlay its vendor relationships through false promises by Foodhall that it strictly would honor and protect District Equities' proprietary information and relationships.

15. Specifically, on or about October 15, 2018, District Equities executed a Consulting Agreement (the "Agreement"). The Agreement was drafted by Foodhall, which identified itself—and not Urbanspace Tysons, as the proper contracting party, as, among other things, the entity in the business of food halls. The Agreement declared "the expressed intention of both parties" that it shall be "superseded by a joint venture agreement."

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301-340-2020

16. Pursuant to the Agreement, District Equities agreed to act as the "Consultant" for "the Company"—identified as Foodhall—to deliver a leasing plan; term sheets for spaces within the Tysons Galleria Foodhall Project; licenses for use and occupancy of the vendor spaces; vendor selection; vendor coordination; and vendor management. Agreement, Schedule A.

17. Specifically, the Agreement further provides in pertinent part:

- "Inventions. Any and all inventions, discoveries, developments and innovations conceived by the Consultant during this engagement relating to the Project shall be the exclusive property of the Company; and the Consultant hereby assigns all right, title and interest in the same to the Company. Notwithstanding the foregoing, [Consultant's] relationships with vendors *are and shall remain proprietary to Consultant, and further involvement and expansion with said vendors shall maintain their association through Consultant*." Agreement, ¶ 5 (emphasis added).

- "Confidentiality. … The Company acknowledges that during the engagement they will have access to and become acquainted with [Consultant's] accounts, relationships, and regional business interests used by the Consultant in connection with the operation of its business. *The Company agrees that it will not disclose or use knowledge gained of Consultant's accounts, relationships and regional business interests during the term of this Agreement or for a period of three (3) years thereafter*, except as required in the course of this engagement with the Consultant.

  Contractor and Company mutually agree they shall use its best efforts to cause all of their Representatives who are in receipt of Proprietary Information to observe and comply with all of the terms, covenants and conditions of this Agreement." Agreement, ¶ 6 (emphasis added).

- "Consultant shall be the primary point of contract and advocate for Vendors through Vendor booth design, menu design, business planning, construction and load in. Consultant shall be supported by Company design, construction and curation teams. Consultant should be the main project manager to see vendor project through from relationship initiation to active operation." Agreement, Schedule A.

- "Consultant shall be the ongoing point of contact and advocate for Vendors through the life of their contacts." Agreement, Schedule A.

18. On its part, Foodhall required that District Equities agree not to directly compete within the foodhall business for two years following termination. Based upon Foodhall's expressed intention to form a joint venture with District Equities and the material terms to which

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301-340-2020

Foodhall agreed for the protection of District Equities' goodwill and proprietary information, District Equities agreed.

19. While District Equities entered into the Agreement with Foodhall, representatives from Urbanspace Tysons reached out to District Equities to perform the tasks necessary to execute the Tysons Galleria Foodhall Project. Upon information and belief, Urbanspace Tysons—not Foodhall—entered into a contract with the property owner, Brookfield, to develop the Tysons Galleria Foodhall Project. While neither Foodhall nor Urbanspace Tysons disclosed the Brookfield contract or its terms to District Equities, District Equities worked with Urbanspace Tysons in good faith, especially given Foodhall's expressed intention to enter into a joint venture for opportunities beyond the Tysons Galleria Foodhall Project.

20. District Equities' task was daunting, because the property owner wanted the Tysons Galleria Foodhall Project to be operating for the holiday season, only months away. Thus, immediately upon executing the Agreement, District Equities hit the ground running, working tirelessly—and ultimately successfully—to fill vendor spaces within the Tysons Galleria Foodhall Project.

21. Using its vast knowledge and relationships within the Washington Metropolitan Area vendor network, District Equities identified dozens of vendors as prospects for the Tysons Galleria Foodhall Project. District Equities then narrowed those prospects, based upon its analysis of the past and projected use and occupancy of the Tysons Galleria Foodhall Project, and prepared a Prospect Report wherein it identified the vendors best suited not only for each category of food space but also for longevity in the overall Tysons Galleria Foodhall Project.

22. In reliance upon the Agreement's strict confidentiality provisions, District Equities disclosed to both Foodhall and Urbanspace Tysons the Prospect Report, which

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301-340-2020

contained District Equities' highly proprietary vendor lists and analyses. District Equities further disclosed to Foodhall and Urbanspace Tysons its highly proprietary list of other vendors, from where additional prospects for the Tysons Galleria Foodhall Project could be drawn.

23. District Equities then presented and negotiated Urbanspace's standard short term license agreement to selected vendors, with assurances by Foodhall and Urbanspace Tysons that, upon opening of the Tysons Galleria Foodhall Project, Urbanspace Tysons would deliver full lease agreements to the vendors based upon the general business terms contained within the short term license agreements. Pursuant to the Agreement, District Equities at all times during the negotiations of the short term license agreements remained the point of contact with the vendors.

24. Given the timing of the Tysons Galleria Foodhall Project, and the short-term nature of the agreements they would be signing, the selected vendors relied upon their relationships with District Equities, as well as District Equities' reputation as a straight and honest business, to gamble on the prospect of doing business in the previously failed Tysons Galleria space.

25. Ultimately, five (5) of the vendors that District Equities had selected—Andy's Pizza, Stomping Ground, Senkhao, Donburi, and Ice Cream Jubilee—signed short-term license agreements with Urbanspace Tysons to use the space designated in each respective license agreement through an initial term of not later than February 21, 2019.

26. Thus, by mid-November, having signed the initial vendors, District Equities had honored and performed its obligations under the Agreement of a preliminary leasing plan, term sheets, licenses, vendor selection, and vendor coordination.

27. Thereafter, in reasonable reliance upon Foodhall's expressed intention to form a joint venture with District Equities, District Equities went above and beyond its contractual

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301-340-2020

duties in order to ensure a timely opening of the Tysons Galleria Foodhall Project. Among other things, District Equities ensured compliance with various requirements for occupancy and operation of the Tysons Galleria Foodhall Project, such as certificates of insurance for vendors, contractors and the like; secured Alcohol Control Board liquor licenses for the vendors; contributed labor to clean and clear the vendors' spaces from the condition in which they were left after the precipitous closing of the Isabella Eatery; and helped the vendors purchase ingredients, hire staff, and otherwise position themselves for a timely opening of their spaces.

28. As a result of District Equities' stellar performance of the Agreement, on or about December 4, 2018, the Tysons Galleria Foodhall Project opened as "A Taste of Urbanspace," and was publicized as a joint venture between U.K.-based Urbanspace and District Equities.

29. Having achieved the Herculean task of timely opening A Taste of Urbanspace, District Equities turned its attention to the next phase of the Tysons Galleria Foodhall Project—negotiating long term leases for the existing vendors and selecting additional vendors to fill remaining spaces. Pursuant to the Agreement, District Equities continued to interface with the vendors to secure long term leases. District Equities communicated what the vendors stated were their essential terms for such long term agreements, which terms were consistent with the short term agreements that drew them to the Tysons Galleria Foodhall Project.

30. Moreover, District Equities formulated a strategic plan for Phase Two of the Tysons Galleria Foodhall Project, which included, among other things, obtaining research and construction estimates for physical adjustments and changes to the space for long term development; interviewing and identifying a marketing firm to publicize A Taste of Urbanspace; and proposing District Equities' running the Octagon Bar—the centerpiece of the space—to host private events.

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301-340-2020

31. Foodhall and Urbanspace Tysons showered praise on District Equities' performance, recognizing that District Equities is "batting 1000 with the vendors [it's] picked" and "[t]he mall is thrilled with the selection and they want to see more." Foodhall and Urbanspace Tysons not only encouraged District Equities to "keep doing what your [sic] doing" under the Agreement, but also to "keep the door open" so that District Equities could be "part of the team" to grow Urbanspace in the Washington Metropolitan Area. Nonetheless, representatives of Foodhall and Urbanspace Tysons claimed a "need to keep tight control over the operations," and refused further to discuss the terms of a joint venture, stating instead "[a]t this time we would like to stay with the current arrangement."

32. While they encouraged District Equities' continued performance of the Agreement, Foodhall and Urbanspace Tysons kept secret their actual intention to deprive District Equities of the strict protections that it was led to believe it secured by the Agreement. Specifically, having secured District Equities' timely and exemplary performance under the Agreement—and therefore a foothold for Foodhall and/or Urbanspace Tysons in District Equities' territory of business through receipt of District Equities' proprietary vendor relationships and knowledge—Foodhall and Urbanspace Tysons set about to cut District Equities out of the Tysons Galleria Foodhall Project, and made clear the sham of the intended joint venture for expanded business opportunities in and about the Washington Metropolitan Area.

33. Unbeknownst to District Equities, Urbanspace Tysons began to bypass District Equities as the primary point of contact for and with the existing vendors at A Taste of Urbanspace, and directly and secretly began to communicate with them. Specifically, as of no later than March of 2019, Urbanspace Tysons began to attempt to negotiate long-term leases directly with the vendors in an effort to replace District Equities' proprietary relationships to the

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301-340-2020

vendors with its own. Urbanspace Tysons further visited the vendors—without informing District Equities—again with an intent to override the vendors' relationships with District Equities. Urbanspace Tysons touted the resources that it purported to devote to A Taste of Urbanspace, and anticipated "the changes" that it would make to A Taste of Urbanspace "together" with the vendors—without District Equities. Thus, despite knowing of the precise terms to which Foodhall agreed in the Agreement, Urbanspace Tysons purported to displace District Equities as the ongoing point of contact through the life of the vendors' contracts at A Taste of Urbanspace Foodhall, and otherwise improperly inserted itself into the involvement and expansion with the vendors.

34. Moreover, Urbanspace Tysons directly communicated with vendor prospects previously identified by District Equities to fill vacant spaces within A Taste of Urbanspace.

35. Then, suddenly and precipitously, on or about May 30, 2019, Foodhall gave District Equities notice of its termination, without cause, of the Agreement, effective July 3, 2019. Along with notice of its impending termination of the Agreement, Foodhall stated in pertinent part as follows:

> You are reminded that all trade secrets, innovations, business plans and procedures and other confidential information of the Company are proprietary and may not be used by you in any way except as specifically provided for in the Agreement. In addition, you are also reminded of the "not compete" and confidentiality provisions contained in the Non-Compete Agreement.

36. Thus, Urbanspace Tysons, by engaging in combination with Foodhall in misrepresentations of expressed intentions, manipulation of the corporate form, subterfuge, and breach of the Agreement, has sought to accomplish precisely what District Equities feared from the outset and what Foodhall promised not to do—the deliberate theft and exploitation of District

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301-340-2020

Equities' intellectual capital to establish a multimillion-dollar business and foothold in the Washington Metropolitan Area at District Equities' expense.

## COUNT I
### (Violation of Virginia Business Conspiracy Act (§§ 18.2-499 and 18.2-500))

37. District Equities adopts and incorporates herein by reference the allegations of ¶¶ 1 through 36 above as if fully set forth herein.

38. The Virginia Business Conspiracy Act provides in pertinent part that it shall be a violation of the Virginia Business Conspiracy Act for any two or more persons to combine, associate, agree, mutually undertake or concert together—or for a person to attempt to procure the participation, cooperation, agreement, or other assistance of any one or more persons to enter into any combination, association, agreement, mutual understanding or concert—for the purpose of either willfully and maliciously injuring another in his reputation, trade, business, or profession by any means whatever, or willfully and maliciously compelling another to do or perform any act against his will.

39. Urbanspace Tysons violated the Virginia Business Conspiracy Act by combining, associating, agreeing, mutually undertaking or concerting with Foodhall, and/or attempting to procure the participation, cooperation, agreement, or other assistance of Foodhall, for the purpose of willfully and maliciously injuring District Equities in its reputation, trade, and business and willfully and maliciously compelling District Equities to do or perform act(s) against its will.

40. Urbanspace Tysons' unlawful objectives included, among other things, seeking to (i) fraudulently induce District Equities into entering into the Agreement, and (ii) misappropriate District Equities' trade secrets and highly proprietary information to pursue the Tysons Galleria Foodhall Project—which Urbanspace Tysons knew it could not achieve without District

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301-340-2020

Equities, and otherwise gain an unfair foothold in the Washington Metropolitan Area at the expense of District Equities' competitive advantage and goodwill.

41. The set-up by Urbanspace Tysons included, among other things, Urbanspace Tysons willfully, maliciously, deceptively, and deftly stealing District Equities' intellectual capital and relationships and compelling District Equities to agree to the inclusion of a harsh, onerous non-compete clause in the Agreement relating to the food hall business, under the guise of a fraudulent expressed intent for Foodhall and District Equities to form a joint venture relationship for pursuit of food hall and other opportunities in the Washington Metropolitan Area and beyond, and false promises by Foodhall that it and its Representatives strictly would honor and protect District Equities' proprietary information and relationships.

42. Urbanspace Tysons then proceeded with a course of conduct utilizing deception, coercion, and acting in concert with Foodhall, to willfully and maliciously injure District Equities. This course of conduct has included, among other things, Urbanspace Tysons and Foodhall proceeding in bad faith as Foodhall entered into the Agreement; Urbanspace Tysons and Foodhall blurring their corporate forms to lure and obtain for Urbanspace Tysons District Equities' performance under the Agreement; Urbanspace Tysons purporting to displace District Equities as the ongoing point of contact through the life of the vendors' contracts at A Taste of Urbanspace Foodhall, and otherwise improperly inserting itself into the involvement and expansion with the vendors; *et cetera*.

43. As a direct and proximate result of Urbanspace Tysons' violation of the Virginia Business Conspiracy Act, District Equities has suffered and will continue to suffer substantial damages.

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301-340-2020

WHEREFORE, District Equities respectfully requests that this Court enter judgment in favor of District Equities and against Urbanspace Tysons for: (i) damages in a principal amount to be determined at a trial in this matter but that exceeds $75,000; (ii) an amount three-fold the damages sustained by District Equities; (iii) costs of this lawsuit (including reasonable attorneys' fees); (iv) preliminary and permanent injunctive relief; (v) post-judgment interest; and (vi) such other and further relief as the Court deems just and proper.

## COUNT II
(Violation of Virginia Uniform Trade Secrets Act (§§ 59.1-336, *et seq.*))

44. District Equities adopts and incorporates herein by reference the allegations of ¶¶ 1 through 43 above as if fully set forth herein.

45. District Equities developed information, including but not limited to vendor lists and techniques, processes, formulas, patterns, and methods, that derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use ("District Equities' Trade Secrets"). District Equities' Trade Secrets are the subject of efforts that are reasonable under the circumstances to maintain their secrecy.

46. Urbanspace Tysons misappropriated District Equities' Trade Secrets. Among other things, Urbanspace Tysons acquired District Equities' Trade Secrets when it knew that such acquisition was improper. Specifically, Urbanspace Tysons acquired District Equities' Trade Secrets from, and/or in concert with, Foodhall, despite knowing that Foodhall breached a contractual duty not to use District Equities' Trade Secrets and/or a contractual duty to maintain their secrecy.

47. Moreover, Urbanspace Tysons used District Equities' Trade Secrets, without express or implied consent of District Equities, despite knowing that it acquired District Equities'

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301-340-2020

Trade Secrets under circumstances giving rise to a duty to maintain their secrecy or limit their use, and/or knowing that District Equities' Trade Secrets were derived from or through Foodhall, which owed a duty to District Equities to maintain the secrecy of, and limit the use of, District Equities' Trade Secrets.

48. As a direct and proximate result of Urbanspace Tysons' violation of the Virginia Uniform Trade Secrets Act, District Equities has suffered and will continue to suffer substantial damages.

WHEREFORE, District Equities respectfully requests that this Court enter judgment in favor of District Equities and against Urbanspace Tysons for: (i) damages in a principal amount to be determined at a trial in this matter but that exceeds $75,000; (ii) preliminary and permanent injunctive relief; (iii) post-judgment interest; and (iv) such other and further relief as the Court deems just and proper.

## COUNT III
### (Tortious Interference with Contract)

49. District Equities adopts and incorporates herein by reference the allegations of ¶¶ 1 through 48 above as if fully set forth herein.

50. A valid Agreement existed between District Equities and Foodhall. Pursuant to the Agreement, as more fully stated hereinabove, Foodhall agreed among other things, that: (i) further involvement and expansion with any Tysons Galleria Foodhall Project vendors shall maintain their association through District Equities; (ii) it will not disclose or use knowledge gained of District Equities' accounts, relationships and regional business interests during the term of the Agreement or for a period of three (3) years thereafter; (iii) it shall use its best efforts to cause all of its representatives who are in receipt of District Equities' Proprietary Information to observe and comply with all of the terms, covenants and conditions of the Agreement; (iv)

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301-340-2020

District Equities shall be the ongoing point of contact and advocate for Tysons Galleria Foodhall Project vendors through the life of their contacts; and (v) it shall provide to District Equities quarterly financial updates of monthly sales.

51. Urbanspace Tysons had express knowledge of the Agreement, as well as all of its terms.

52. Urbanspace Tysons intentionally caused Foodhall to breach the Agreement. Specifically, among other things, Urbanspace Tysons has caused Foodhall to deprive District Equities of involvement and expansion with the Tysons Galleria Foodhall Project vendors by placing Urbanspace Tysons in that role instead; has caused Foodhall to allow Urbanspace Tysons to use knowledge of District Equities' accounts, relationships and regional business interests in operating A Taste of Urbanspace; has caused Foodhall to decline to use best efforts to cause its representatives to observe and comply with the Agreement; and has caused Foodhall to deprive District Equities of its role as ongoing point of contact and advocate for Tysons Galleria Foodhall Project vendors through the life of their contacts.

53. As a direct and proximate result of Urbanspace Tysons' acts and inducement of Foodhall to breach the Agreement, District Equities has suffered and will continue to suffer substantial damages.

WHEREFORE, District Equities respectfully requests that this Court enter judgment in favor of District Equities and against Urbanspace Tysons for: (i) damages in a principal amount to be determined at a trial in this matter but that exceeds $75,000; (ii) preliminary and permanent injunctive relief; (iii) post-judgment interest; and (iv) such other and further relief as the Court deems just and proper.

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301-340-2020

Respectfully submitted,

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

By: *Jeffrey M. Schwaber*
Jeffrey M. Schwaber (35466)
jschwaber@steinsperling.com
301-354-8110 (facsimile)

Deanna L. Peters (47851)
dpeters@steinsperling.com
301-354-8131 (facsimile)

25 West Middle Lane
Rockville, Maryland 20850
301-340-2020

*Attorneys for District Equities, LLC*

### JURY DEMAND

District Equities demands trial by jury on all counts, and on all issues so triable.

*Jeffrey M. Schwaber*
Jeffrey M. Schwaber (35466)

STEIN SPERLING BENNETT
DE JONG DRISCOLL PC

ATTORNEYS AT LAW
25 WEST MIDDLE LANE
ROCKVILLE, MARYLAND 20850

TELEPHONE 301-340-2020

16